**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KINGVISION PAY-PER-VIEW CORP., LTD.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 02-4821** |
| **v.** ) | |
| ) | |
| **SMALL ROLLER, INC.** ) | |
| **d/b/a SMALL ROLLER;** ) | |
| **Esrick O. Copeland and Glenda J. Copeland** ) | |
| **2310 Cecil B. Moore Boulevard** ) | |
| **Philadelphia, PA 19121** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF REQUEST FOR JUDGMENT BY DEFAULT**

Plaintiff, Kingvision Pay-Per-View Corp., Ltd., by its attorneys, Harper & Paul, files

this Memorandum of Law and says:

**POSTURE OF THIS CASE**

On Kingvision Pay-Per-View Corp., Ltd. filed suit against Small Roller, Inc. d/b/a

Small Roller; Esrick O. Copeland and Glenda J. Copeland.  The lawsuit charged the

Defendant with a violation of Section 705 of the Federal Communications Act of 1934, as

amended, 47 U.S.C. §§553 and 605 (the "Statutes").

Upon the failure of the Defendants, Small Roller ; Esrick O. Copeland and Glenda

J. Copeland, to timely file an Answer or any other responsive pleading, the Plaintiff filed

and requested that a default judgment be entered against the Defendant.  On July

29,2003, a default was so entered.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil

Procedure, a default judgment is appropriate.

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits."  Wright, Miller & Kane, Federal Practice and Procedure, §2684, p. 419-20.  Therefore, all of the facts alleged in the Complaint should be considered as true and are binding on the Defendant.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); Wright, §2688, p.444.  Accordingly, the only issue remaining to be decided in this case is the amount of damages to which Plaintiff is entitled from the Defendant as a result of her violation of the Statute.

## **FACTS**

Kingvision Pay-Per-View Corp., Ltd. entered into a closed-circuit television license agreement (the "License Agreement") to exhibit the closed-circuit telecast of the September 29, 2001 Championship boxing match between Felix Trinidad and Bernard Hopkins from the Madison Square Garden in New York, NY including undercard or preliminary bouts (the boxing match and all related bouts are collectively referred to as the "Event"), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Pennsylvania.  The License Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

In the State of Pennsylvania, the Event was legally available to the public only through very limited means.  A commercial establishment, such as a bar, restaurant or lounge, could receive and broadcast the Event only after entering into a contractual agreement with Kingvision Pay-Per-View Corp., Ltd.  A residential cable subscriber could

only obtain the Event by purchasing it for an additional fee through the subscriber's residential pay-per-view cable system.

The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for the use of the general public.  If a commercial establishment was authorized by Kingvision Pay-Per-View Corp., Ltd. to receive the Event, it was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal.  For an authorized residential pay-per-view customer to receive the Event, its cable system would "authorize" the residential converter to enable it to be capable of unscrambling the transmission.

The authorized commercial establishments which contracted with Kingvision Pay-Per-View Corp., Ltd. were required to pay to Kingvision Pay-Per-View Corp., Ltd. sublicense fee.  In addition, these establishments were contractually required to charge their patrons an admission fee for attending the exhibition of the Event.

The Defendant is the owner and/or operator of Small Roller, a commercial establishment located at 2310 Cecil B. Moore Blvd., Philadelphia, PA 19121.  On September 29, 2001, without authorization, the Defendant or agents, servants and/or employees of the Defendant intercepted and received or assisted in the interception and receipt of the transmission of the Event.  They thereupon broadcast or assisted in the broadcast of the Event to the patrons of Small Roller.

On the night of the Event, Regina Coles observed the Event being telecast to the patrons of Small Roller. While the Event was being broadcast in Small Roller, Ms.Coles observed that there were  patrons located on the premises.

3

As  Kingvision Pay-Per-View Corp., Ltd. maintained proprietary rights in the signal of the Event, all unlawful acts of interception, receipt and broadcast of the signal by the Defendant were in violation of Kingvision Pay-Per-View Corp., Ltd. rights and caused Kingvision Pay-Per-View Corp., Ltd. to suffer damages.

## DAMAGES UNDER THE COMPLAINT

The Statutes in General

47 U.S.C. §605 provides inter alia that:

> [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. §605(a).  Thus, it protects against the theft of satellite communications such as the Event.  See e.g., International Cablevision, Inc. v. Sykes, 75 F.3d.123 (2d Circ. 1996), Cimenelli v. Cablevision, 583 F.Supp. 158, 161 (E.D.N.Y. 1984); Cablevision Systems Development Co. v. Annasonic Electronic Supply, No. CV-83-5189 (E.D.N.Y. February 10, 1984); Cablevision Systems Coup. v. DePalma, No. CV 87-3528 (E.D.N.Y. January 17, 1989); California Satellite Systems v. Seimon, 767 F.2d 1364 (1985); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F.Supp. 1159 (D. Mass. 1986); National Subscription Television v. S & H TV, 644 F.2d 820 (9th Cir. 1981); National Football League v. Alley, Inc., 624 F.Supp. 6 (S.D. Fla. 1983).  47 U.S.C. §553(a)(1) provides identical protection for cable communications.  Home Box Office v. Gee-Cee, Inc. 838

F.Supp. 436 (E.D. Mo. 1993).  Accordingly, all acts of unlawful interception, receipt and broadcast of the signal of the Event were in violation of the Federal Communication Act.

In order to deter the unlawful use of communications such as the Event, Congress specifically designed the Statutes to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control."  Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7, 5577, 5658; See U.S. v. Scott, 783 F.Supp. 280, 281 (N.D. Miss. 1992).  Therefore, the Statutes include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications. See Scott, 783 F.Supp. at 281; See generally §§553(b) and 605(e).[1]  Moreover, Congress has equated a violation of the Statutes to theft of service. See 1988 U.S. Code Cong. & Admin. News. 7, 5577, 5642-43.  In 1988, in an effort to further deter theft, Congress amended the Statutes to provide for more severe penalties for violations.  Id. at 5657.

Accordingly, a party aggrieved under the Statutes may recover statutory damages of up to $10,000.00 for each violation thereof.  §§553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II). Moreover, if the Court finds that the violation of the Statutes was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain..." the Court may award additional damages of up to $100,000.00 for each violation under §605(e)(3)(C)(ii) and $50,000.00 under §553(c)(3)(B).  Furthermore, a Court shall award full costs, including reasonably attorneys' fees. §605(e)(3)(B)(iii). Because Kingvision Pay-Per-View Corp., Ltd. constitutes an aggrieved party under the Statutes, see §§553(C)(1)

---

[1] The criminal penalties include fines and imprisonment.  See §§553(b)(1) and (2); and 605(e)(1) and (e)(2).

and 605(D)(6), Kingvision Pay-Per-View Corp., Ltd. is entitled to damages from the Defendant for her unlawful acts.

It is obvious that the Defendant's interception, receipt and broadcast of the Event was not innocent. Both §§ 553(c)(3)(C) and 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section..." However, as stated by Congress, this type of situation occurs rarely,

> [i]t is not intended that this provision serve in any way as a defense to a determination of liability under subsection (a), but rather only as a provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751. Clearly, this was not the instant situation.

As Small Roller is a commercial establishment, it could not have obtained the transmission or the Event had the Defendant not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast. In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the Event into the establishment or moving an unauthorized decoder from its authorized location to the establishment. Because the Defendant must have committed wrongful acts in order to intercept and/or receive and broadcast the Event, there is no basis for limiting Kingvision Pay-Per-View Corp., Ltd. relief to the $10,000 provided for in §§553(c)(3)(A)(ii) and 605(e)(3)(C)(i).

6

## Statutory Damages Under §§553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II)

As its first basis for relief, Kingvision Pay-Per-View Corp., Ltd. is requesting statutory damages pursuant to §605(e)(3)(C)(i)(II).  See Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 850 (11th Cir. 1990)[2]  Pursuant to the Statute, the amount of statutory damages to which Kingvision Pay-Per-View Corp., Ltd. is entitled for the violation shall be not less than $1,000.00 and not more than $10,000.00.

For the reasons set forth, Kingvision Pay-Per-View Corp., Ltd. believes it is entitled to full statutory damages in the amount of $10,000.00 for the violation of the Statute.

As stated supra, on September 29, 2001, the Defendant or agents, servants and/or employees of the Defendant intercepted and received or assisted in the interception and receipt of the live telecast of the Event.  They then broadcast or assisted in the broadcast of the Event to the patrons at Small Roller for viewing therein.  The patrons at Small Roller purchased meals and/or drinks while viewing the Event.  The patrons whom the Defendant permitted without authorization to view the Event would otherwise only have been able to view the Event at a commercial establishment by paying an admittance fee at an establishment authorized by Kingvision Pay-Per-View Corp., Ltd. to receive the transmission.

The Defendant broadcast the Event to the patrons at Small Roller without paying any sublicense fees to Kingvision Pay-Per-View Corp., Ltd.  To date, no amount has been paid to Kingvision Pay-Per-View Corp., Ltd. to compensate it for the illegal broadcast of the Event in Small Roller.

---

[2] It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. Id.

Statutory damages are appropriate where actual damages are difficult to prove. Lauratex Textile Corp. v. Allton Knitting Mills, Inc., 519 F.Supp. 730, 732 (S.D.N.Y. 1981); Lottie Jonlin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952). In the instant case, as more fully discussed infra, it would be impossible to determine the full extent of the profits lost by Kingvision Pay-Per-View Corp., Ltd. and the additional damages sustained by Kingvision Pay-Per-View Corp., Ltd. as a result of the Defendant's unlawful actions.

Accordingly, it is appropriate for Kingvision Pay-Per-View Corp., Ltd. to elect to receive statutory damages.

Because the Statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. §101 et seq. (the "Copyright Act") is similar to the Statute, its case law is instructive for the determination of the amount of statutory damages to which Kingvision Pay-Per-View Corp., Ltd. is entitled.[3]

---

[3] 17 U.S.C. §504(c)(1) provides as follows:

**Statutory damages**. (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum not less than $500 or more than $20,000 as the court considers just.

According to the United States Supreme Court, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider.  Woolworth, 344 U.S. at 233.  Rather,

> a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers.  It would fall short of an effective sanction for enforcement of the copyright policy.  The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct.  The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.  Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

Id. at 233.

Statutory damages under the Copyright Act should serve to compensate the copyright owners and to provide a detriment to would be infringers.  Lottie Joplin Thomas Trust, 592 F.2d at 657; Lauratex, 519 F. Supp. at 732.  Factors to consider in determining a statutory damage award include: (1) "the market value of the rights infringed", (2) "the revenue lost by the plaintiff and profits gained by the defendant", (3) the infringers state of mind" and (4) "deterrence of future infringement: Basic Books, Inc. v. Kinko's Graphics Corp., 758 F.Supp. 1522, 1544 (S.D.N.Y. 1991).

The sublicense fees which Kingvision Pay-Per-View Corp., Ltd. charges to an authorized commercial establishment are based upon specific factors, including the capacity of the bar.  The Ms. Coles Affidavit establishes that the capacity of Small Roller is at least 5 patrons. See attached Exhibit "B."   Thus, based on its capacity, Kingvision Pay-Per-View Corp., Ltd. would have requested from Small Roller a sublicense fee of approximately $1,400.00 in order to authorize it to broadcast the Event.

9

Applying the Courts' analysis from its decisions under the Copyright Act, in the instant case, the lost income from the sale of the Event to Small Roller represents only a starting place for the determination of the amount of damages to which Kingvision Pay-Per-View Corp., Ltd. is entitled for the Defendant's wrongful acts.

When Congress enacted the Statute, it was specifically cognizant of the problems of theft of various wire communications, including closed-circuit programming, such as the Event.  As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service.  This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants.  Such practices does not only often permit one to obtain cable service without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News. '84 Bd. Vol. -6, 4655, 4720.  Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise would be receiving payment for their programming

or descrambling devices.  See, U.S. v. Scott, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

The impact of theft of this type is far-reaching throughout the entertainment industry. According to the Office of Cable Signal Theft of the National Cable Television Association, the cable industry loses an estimated 3 Billion Dollars annually as a result of the theft of cable signals.  Cable Piracy Fact Sheet.  Not only do these acts of theft cause legitimate businesses to lose money, but they also weaken the cable signal, thereby adversely affecting the quality of the picture received by authorized users.  Id.

Theft has also adversely impacted the movie industry.  Theft of American movies and television programming, including satellite and cable television programming, has increased 27% since 1990.  News Release, March 18, 1992, Motion Picture Export Association of America, Inc. ("MPEAA").  According to Jack Valenti, MPEAA's Chairman and Chief Executive Officer, "[p]iracy is the single biggest problem facing the motion picture industry today".  Id.  These thefts cost the industry over 1.2 Billion Dollars annually.  Id.

Similarly, the unauthorized interception, receipt and broadcast of the Event and other closed-circuit programming threatens the viability of the closed-circuit industry.  There are no countervailing social or policy considerations which justify the unauthorized interception of these broadcasts.  Cf., ON/TV of Chicago v. Julien, 763 F.2d 839, 843 (7th Cir. 1985); Subscription Television of Greater Washington v. Kaufman, 606 F.Supp. 1540, 1544 (D.D.C. 1985).

In addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Small Roller and its patrons, Kingvision Pay-Per-View Corp., Ltd. should receive additional compensation to account for any profits gained by the Defendant

11

for meals and/or drinks sold to the patrons as a indirect result of her unlawful acts. Moreover, Kingvision Pay-Per-View Corp., Ltd. should be further compensated as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event to Small Roller and its patrons as well as the value of "business investment, business opportunities and goodwill."  See American Television and Communications Corp. v. Floken, Ltd., 629 F.Supp. 1462, 1466 (M.D. Fla. 1986).  As a result of theft by the Defendants and others, Kingvision Pay-Per-View Corp., Ltd. has lost and will continue to lose as customers legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Small Roller, which steal sports and other closed-circuit programming.   Because these unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments are required to charge, the legitimate commercial establishments with the right to broadcast closed-circuit programming can not attract paying customers.  As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons and incur financial loss.  When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment increases and, as a result, Kingvision Pay-Per-View Corp., Ltd. and the authorized commercial establishments suffer additional losses.

Theft of closed-circuit broadcasts, such as the Event, by unauthorized commercial establishments, such as Small Roller, adversely affects both Kingvision Pay-Per-View Corp., Ltd. and its customers.  Kingvision Pay-Per-View Corp., Ltd. pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized

commercial establishments. Kingvision Pay-Per-View Corp., Ltd. primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event.

Clearly, the Defendant's actions have the potential to erode the base of Kingvision Pay-Per-View Corp., Ltd. customers. Each patron of Small Roller is lost as a future patron of authorized broadcasts. See Cox Cable Cleveland Area, Inc. v. King, 582 F.Supp. 376, 381 (E.D. Ohio 1983). But for the Defendant's unauthorized broadcast of the Event, all or some of the patrons of Small Roller would have become paying patrons and directly increased the fees paid to Kingvision Pay-Per-View Corp., Ltd. by its authorized commercial establishments.

Further, Kingvision Pay-Per-View Corp., Ltd. has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. See Quincy Cablesystems, Inc., 640 F.Supp. at 1161. When negotiating sublicense fees, Kingvision Pay-Per-View Corp., Ltd. generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming. Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Kingvision Pay-Per-View Corp., Ltd. reputation and goodwill suffers from what appears like a misrepresentation. Kingvision Pay-Per-View Corp., Ltd. should receive compensation from the Defendant for these losses suffered. Furthermore, an incalculable element of damages is the ill-will and possible loss of future business from legitimate commercial establishments which refuse to pay sublicense fees because they

cannot compete with unauthorized commercial establishments which steal closed-circuit programming, such as the Event.

The continued viability of Kingvision Pay-Per-View Corp., Ltd. as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event.  If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming.

Kingvision Pay-Per-View Corp., Ltd. is operating a legitimate business of the type that Congress specifically sought to protect.  That protection, however, is threatened by the Defendant's actions.  This Court must use the full power of the Statute to punish the Defendant for her acts of theft.  If rampant theft of service is allowed to go unpunished and Kingvision Pay-Per-View Corp., Ltd. and similar distributors of protected communications continue to suffer losses as a result of the theft, these businesses could be forced to curtail distribution of this programming, thereby depriving the people of the State of Pennsylvania of the ability to view these sports and entertainment events.

The arguments set forth herein are also applicable in supporting damages under 47 U.S.C. §553(c)(3)(A)(ii) in the amount of $10,000.00.

Given the benefits which the Defendant received from the broadcasts of the Event and given the additional damages which Kingvision Pay-Per-View Corp., Ltd. has suffered, it is fair and reasonable to assess against the Defendant and award to Kingvision Pay-Per-View Corp., Ltd. statutory damages in the amount of $10,000.00, pursuant to

§§553(c)(3)(A)(ii) and $10,000.00 under 605(e)(3)(C)(i)(II). Clearly, given the wrongfulness of the Defendant's acts and the losses suffered by Kingvision Pay-Per-View Corp., Ltd., it is entitled to these damages.

### Damages for Willful Act Under §§553(c)(3)(B) and 605(e)(3)(C)(ii)

As its second basis for relief, Kingvision Pay-Per-View Corp., Ltd. is requesting damages pursuant to §§553(c)(3)(B) and 605(e)(3)(c)(ii) because the Defendant's actions were willful and "for purposes of direct or indirect commercial advantage or private financial gain". In ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements". Id. at 844 (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).

As set forth supra, because of the absence of any way in which the Defendant could have "innocently" accessed the broadcast of the Event, It is apparent that she specifically and willfully acted to illegally intercept the transmissions of the Event for her commercial advantage. Moreover, as set forth supra, after Vincent Heeney witnessed the Event being broadcast in Small Roller, he handed a cease and desist letter to the Defendant's agent which stated that the broadcast was illegal and should cease.

Clearly, the Defendant's actions indicate disregard of and indifference to the Statute. The Defendant knew that it was wrong to receive, intercept and divert the cable service and the Event and to broadcast it in Small Roller. Similarly, the Defendant knew that her actions were unlawful particularly after receiving the case and desist letter, yet, with total disregard for the Statute. She nevertheless intercepted and received the transmission and

broadcast it to the patrons of Small Roller.  Accordingly, because the Defendant's actions were willful, Kingvision Pay-Per-View Corp., Ltd. is entitled to additional damages.

The Copyright Act provides this court with a further basis for finding that the Defendant's actions were willful.  Here too, because the Statute related to damages for willful violations of the Copyright Act is similar to the Statute, the Copyright Act is again instructive for the instant case.[4]

In Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.. 807 F.2d 1110 (2d Cir. 1986), aff'd., 862 F.2d 304 (1988) the Court of Appeals for the Second Circuit analyzed the criteria for determining whether actions constitute willful conduct.  According to the Court, "a defendant's knowledge that its actions constitute an infringement [of the Copyright Act] establishes that the defendant acted willfully" within the meaning of the Copyright Act.  Id. at 1115; Fallaci v. New Gazette Literacy Corp., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983) (citing 3 Nimmer on Copyright, §14.04 [B][3], at 14-27, 14-28 (1982).  There is no need to prove malice or actual knowledge in order to establish a willful violation; constructive knowledge is sufficient.  See Fitzgerald, 807 F.2d at 1115; Cable/Home, 902 F.2d at 851.  In the instant case, the Defendant's actual knowledge that her acts were wrongful should be sufficient to demonstrate that her acts were willful.

Regarding the second prong of the damages test under §§553(c)(3)(B) and 605(e)(3)(C)(ii), it is patently obvious that the Defendant's actions were "for the purposes

---

[4] The Copyright Act provides as follows:

(2) In a case where...court finds, that infringement was committed wilfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000.  17 U.S.C. §504(c)(2).

of direct or indirect commercial advantage or private financial gain."  §§553(c)(3)(B) and 605(e)(3)(C)(ii).  As stated by Congress,

> [i]t is further intended that the term "direct or indirect commercial advantage or private financial gain" be interpreted broadly by both the courts in deciding actions, and the Department of Justice in pursuing actions, under this section. Those who willfully violate subsection (a) and directly or indirectly enjoy commercial gain from those violations, may be reached.

Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol.-8, 4745, 4750.

Because the Event was broadcast to the patrons of Small Roller, the Defendant's purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial advantage by misappropriating Kingvision Pay-Per-View Corp., Ltd. licensed exhibitions and infringing upon Kingvision Pay-Per-View Corp., Ltd. rights, while avoiding proper payment to Kingvision Pay-Per-View Corp., Ltd.

By interpreting the statutory language broadly as directed by Congress, the Court must find that the Defendant's actions were for her commercial gain as set forth in the Statute.  Accordingly, as the Defendant's actions were willful and for commercial advantage, Kingvision Pay-Per-View Corp., Ltd. is entitled to additional damages under the Statute.

Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize the Defendants for willful acts.  See e.g. Lauratex, 519 F.Supp. at 733 (an increase of seven times the actual damages for willful acts); Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., 1991 WL 58350, No. CV 88 2834 (ASC) (E.D.N.Y. 1991) (the court awarded five times the statutory damages for willful

17

violations); Cable/Home, 902 F.2d 829 (additional damages of five times actual damages for willful conduct).

As a willful violator of this Statute, the Defendant must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." Fallaci, 568 F.Supp. at 1174).

Under the Copyright Act, "when the infringement is willful, 'deterrence of future violations is a legitimate consideration' because 'defendants must not be able to sneer in the fact of copyright owners and copyright laws'." Cable/Home, 902 F.2d at 851 (quoting International Korwin Corp. v. Kowalczyk, 855 F.2d 375, 383 (7th Cir. 1988); See also Chi-Boy Music v. Charlie Club, Incorporated, 930 F.2d 1224, 1230 (7th Cir. 1991). Similarly, in the instant case, the award of additional damages must be sufficiently significant to deter the Defendant and other unauthorized commercial establishments from stealing protected communications.

Accordingly, it is proper for this Court to award to Kingvision Pay-Per-View Corp., Ltd. additional damages in an amount up to $150,000.00 to compensate it for the Defendant's willful acts in connection with the event.

### Attorneys' Fees and Costs

As its third basis for relief, Kingvision Pay-Per-View Corp., Ltd. is requesting payment for its attorneys' fees and costs pursuant to §§553(c)(2)(C) and 605(e)(3)(B)(iii).

18

Pursuant to the §605(e)(3)(B)(iii), said award is mandatory. Section 605(e)(3)(B)(iii) states, "(the Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..." See Maxie's, 1991 WL 58350, No. CV 88 2834.

Attached hereto as Composite Exhibit "C" and incorporated herein by reference is an Affidavits of Sharon N. Harvey, counsel for Kingvision Pay-Per-View Corp., Ltd., which sets for the amount of attorneys' fees assessed and costs advanced through June 18, 2003, in connection with this case. Said amount totals $1,470.00.

<u>**CONCLUSION**</u>

The need for substantial awards to compensate those aggrieved under the Statute and to deter the Defendant and similar individuals and entities has already been recognized in this jurisdiction and other jurisdictions. For the reasons set forth herein, the Plaintiff respectfully requests the aforesaid relief.

Respectfully submitted,


BY:_____
        SHARON N. HARVEY. ESQUIRE
        Attorneys for Plaintiff
        Kingvision Pay-Per-View Corp., Ltd.
        140 West Maplewood Avenue
        Philadelphia, PA 19144
        Tel: 215-844-4848

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

KINGVISION PAY-PER-VIEW CORP., LTD.   )
                                          )
      **Plaintiff,**                    )
                                          )   **Civil Action No. 02-4821**
**v.**                                    )
                                          )
**SMALL ROLLER, INC.**                 )
**d/b/a SMALL ROLLER;**              )
**Esrick O. Copeland and Glenda J. Copeland** )
**2310 Cecil B. Moore Boulevard**    )
**Philadelphia, PA 19121**            )
                                          )
      **Defendants.**            )

---

**CERTIFICATE OF SERVICE**

     I, Sharon N. Harvey, HEREBY CERTIFY that a true and correct copy of the foregoing was served by first class mail on September 17, 2003 and October 23, 2003.

Small Roller, Inc.
2310 Cecil B. Moore Blvd.
Philadelphia, PA 19121

Esrick O. Copeland
2310 Cecil B. Moore Blvd.
Philadelphia, PA 19121

Glenda J. Copeland
2310 Cecil B. Moore Blvd.
Philadelphia, PA 19121

                    BY: _____
                           SHARON N. HARVEY, Esquire
                           Attorneys for Plaintiff
                           140 West Maplewood Avenue
                           Tel: 215-844-4848